# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | |
|---|---|
| **STONEX COMMODITY SOLUTIONS LLC** *f/k/a* **FCSTONE MERCHANT SERVICES, LLC,** | ) ) ) ) |
| *Plaintiff,* | ) ) |
| **v.** | ) **CIVIL ACTION NO.:** <u>23-163</u> ) |
| **OCTAVIO GARCIA,** | ) ) ) |
| *Defendant.* | ) |

## STONEX COMMODITY SOLUTIONS LLC'S COMPLAINT

**COMES NOW**, Plaintiff, StoneX Commodity Solutions LLC *f/k/a* FCStone Merchant Services, LLC ("**StoneX**" or "**Plaintiff**"), by and through its undersigned counsel, and hereby files this Complaint against Defendant, Octavio Garcia ("**Garcia**" or "**Defendant**"), and in support hereof, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    StoneX is a Delaware limited liability company that is authorized to do business in the State of Texas. No member of StoneX is a citizen of the State of Texas, and StoneX has no members that are themselves limited liability companies.

2.    Garcia is a natural person over the age of 21 and is, upon information and belief, a citizen of Hidalgo County, Texas. Garcia is the President of Garcia Grain Trading Corporation ("**GGTC**"), which filed a voluntary bankruptcy petition

under chapter 11 of Title 11 of the United States Code, *see* 11 U.S.C. §§ 101-1532, on February 17, 2023 before the Honorable Eduardo V. Rodriguez in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division, Case No. 23-70028 (the "**GGTC Bankruptcy Action**").

3.     This Court has personal jurisdiction over Garcia, who is a citizen of Texas.

4.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), *et seq*., because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), *et seq*. because the Defendant resides in this district.

## FACTUAL ALLEGATIONS

A.     **Repurchase Transactions Guaranteed by Defendant.**

6.     StoneX is in the business of buying, selling, and transporting physical commodities, including grain, such as corn and sorghum, among other types.

7.     In 2018, StoneX began a business relationship with GGTC, a company owned by Garcia, which was memorialized by a series of repurchase agreements whereby StoneX purchases and takes title to specified quantities of grain (namely

corn and sorghum) stored by GGTC, and then, at times, resells the grain and surrenders title to the same, back to GGTC.

8.    This series of purchase and sale transactions is commonly referred to as a "repo" or "repurchase transaction," and is widely used in the support of commodity supply chains.

9.    The centerpiece agreement to the arrangement between StoneX and GGTC is that certain *Master Purchase and Sale Agreement* (the "**Master Agreement**"), which the parties entered into on or about January 2, 2018. A true and correct copy of the Master Agreement is attached hereto as **Exhibit 1**.

10.    Pursuant to the Master Agreement, GGTC agreed to sell grain to StoneX in quantities and upon such payment terms specified in various Confirmations ("**Purchase Confirmation(s)**") as agreed between the parties from time-to-time.

11.    Upon receipt of each Purchase Confirmation, GGTC issued warehouse receipts and/or bills of lading, depending on whether the particular grain was in storage or transit, to StoneX, reflecting sale and delivery of the grain to StoneX. StoneX took title to the grain upon issuance of the warehouse receipts and/or bills of lading. GGTC stored StoneX's grain at an approved warehouse.

12.    Corresponding with each Purchase Confirmation, StoneX simultaneously agreed to sell the same quantity and quality of grain back to GGTC,

within a specified date range in the future, at either a determined price or a price based on market futures to be mutually agreed to on or before the repurchase date.

13.     In addition to repo transactions, from time to time, StoneX would deliver grain to GGTC warehouse(s), and GGTC would agree to store the grain pursuant to negotiable warehouse receipts issued to StoneX (together with the repo transactions, the "**Transactions**").

**B.     Defendant's Personal Guaranty.**

14.     In exchange for, and as inducement of, StoneX's continued participation in the Transactions with GGTC as described above, the Defendant executed that certain *Personal Guaranty* dated September 12, 2022 (the "**Guaranty**").  A true and correct copy of the Guaranty is attached hereto as **Exhibit 2**.

15.     Pursuant to the Guaranty, Defendant guaranteed the prompt payment, in full, of all GGTC's obligations to StoneX resulting from, among other things, the Transactions conducted pursuant to the Master Agreement and otherwise.

16.     Specifically, Defendant agreed to "pay immediately and unconditionally on first demand to [StoneX] any Indebtedness which [StoneX] claims under this Guaranty plus all interest, reasonable attorneys' fees, litigation costs, and other costs of collection, if any, related to such Agreement to be paid by [GGTC] for the collection of Indebtedness."

17.    As used in the Guaranty, the term "Indebtedness" includes "any loss incurred by [StoneX] as a result of or in connection with the liability to [StoneX] of [GGTC] in connection with the Transactions … the amount of such loss being the amount which [StoneX] would otherwise have been entitled to recover from [GGTC]."

18.    Pursuant to the terms of the Guaranty, StoneX is not required to make demand of, or seek payment from, GGTC before it is entitled to payment from Defendant.

## C.    Current Amounts Owing to StoneX.

19.    As of the date of this Complaint, StoneX and GGTC have multiple open Transactions pursuant to which StoneX currently holds title to 1,491,771 bushels of corn and 680,000 bushels of sorghum (collectively, the "**StoneX Grain**") that GGTC has agreed to purchase for the aggregate amount of not less than $19,461,058.00 (the "**Indebtedness**").

20.    On February 17, 2023, GGTC filed the GGTC Bankruptcy Action in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division. GGTC continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.[1]

---

[1] StoneX may file, and reserves its rights to file, any subsequent motions or pleadings in the GGTC Bankruptcy Action seeking approval for StoneX to take possession of the StoneX Grain and liquidate the same. To the extent StoneX takes possession of, liquidates, and realizes value from the StoneX Grain, the Indebtedness may be reduced.  StoneX has filed a *Motion to Convert*

21.     To date, the Defendant has failed and refused to remit payment of the Indebtedness, or any portion thereof, to StoneX.

## **COUNT ONE - BREACH OF CONTRACT (GUARANTY)**

22.     StoneX adopts and incorporates all preceding paragraphs as if they were fully set forth herein.

23.     The Guaranty is a valid and binding contract between StoneX and the Defendant.

24.     StoneX has complied with its contractual obligations under the Guaranty.

25.     Pursuant to the terms of the Guaranty, Defendant made an absolute guaranty of payment of all obligations of GGTC arising from the Transactions, including repo transactions under the Master Agreement.

26.     The Defendant has failed to perform or tender performance as contractually required, and StoneX has been damaged due to said breach.

27.     GGTC owes StoneX not less than $19,461,058.00 arising from the Transactions, including repo transactions under the Master Agreement.

---

*Case to One Under Chapter 7* as of April 12, 2023.  *See* GGTC Bankruptcy Action, [ECF No. 144].

28.    Based upon the foregoing, Defendant is liable to StoneX in the sum of not less than $19,461,058.00 plus interest, reasonable attorneys' fees, litigation costs, and other costs of collection.

29.    All conditions precedent have been satisfied prior to the filing of this action.

## COUNT TWO – NEGLIGENT MANAGEMENT

30.    StoneX adopts and incorporates all preceding paragraphs as if they were fully set forth herein.

31.    The Defendant, as the manager responsible for the operation of grain warehouses licensed under Texas law, owed the following duties, among others, to StoneX, as a grain depositor:

a.    The duty to ensure the existence of a sufficient quantity of grain in storage prior to the issuance of a warehouse receipt;

b.    The duty to ensure that receipted grain remained in storage until the warehouse receipt covering such grain is canceled;

c.    The duty to timely notify StoneX and the Texas Department of Agriculture of the existence of a shortage;

d.    The duty to ensure that all grain shortages are timely and appropriately corrected;

e.      The duty to ensure the shipment of grain, at the request of StoneX

within the time period specified by the shipping order or written agreement;

f.      The duty to ensure the maintenance of complete and correct daily

position reports regarding the grain stored at the respective warehouses;

g.      The duty to ensure the maintenance and retention of records of

warehouse receipts, daily position reports, scale weight tickets, contracts and other

similar records; and

h.      The duty to ensure that true and correct financial statements are

submitted to the Texas Department of Agriculture.

32.     Upon the filing of the GGTC Bankruptcy Action, StoneX discovered

that the Defendant had grossly mismanaged GGTC's warehouses in contravention

of his duties under Texas law, including failing to ensure that GGTC's Progreso

Warehouse—from which StoneX's warehouse receipts were issued—contained a

sufficient quantity of grain. Likewise, the Defendant failed to properly document,

cure, or notify StoneX of the apparent grain shortage. Thus, the Defendant breached

each of the duties owed to StoneX set forth in the preceding paragraph.

33.     The Defendant's acts and omissions, which constitute breaches of legal

duties owed to StoneX, proximately caused extra-contractual pecuniary damages to

StoneX including, but not limited to, costs associated with investigating the extent

of the apparent grain shortage and the Defendant's misdeeds, costs associated with

recovery of StoneX Grain, and loss of business opportunity and/or business reputation.

## COUNT THREE – NEGLIGENT MISREPRESENTATION

34.    StoneX adopts and incorporates all preceding paragraphs as if they were fully set forth herein.

35.    Upon execution of the Master Agreement, and on the date of each Transaction, the Defendant made the following representations to StoneX, among others:

a.    That GGTC was duly licensed as a warehouseman and was in compliance with all applicable licensure, bonding, insurance, and regulatory requirements;

b.    That GGTC was in compliance with all applicable State or Federal law; and

c.    That all warehouse receipts issued by GGTC reflected actual commodities stored in the applicable GGTC warehouse(s) of the grade, quality, and quantity described in each such warehouse receipt.

36.    Upon consummation of each Purchase Confirmation, upon issuance of each warehouse receipt, upon issuance of GGTC's "daily position reports" pursuant to Texas law, and from time-to-time via email and telephone, the Defendant represented to StoneX that GGTC held certain quantities and amounts of grain in

storage in its facilities in at least an amount equal or greater to the total amount of grain covered by warehouse receipts issued for each such facility.

37. The above representations were false and material.

38. Additionally, upon execution of the Master Agreement, upon consummation of each Purchase Confirmation, upon issuance of each warehouse receipt, upon issuance of GGTC's "daily position reports" pursuant to Texas law, and from time-to-time during email and telephonic correspondence, the Defendant failed to disclose the following to StoneX:

a. That GGTC was not in compliance with all applicable licensure, bonding, insurance, and regulatory requirements;

b. That GGTC was not in compliance with all applicable State or Federal law;

c. That all warehouse receipts issued by GGTC did not reflect actual commodities stored in the applicable GGTC warehouse(s) of the grade, quality, and quantity described in each such warehouse receipt; and

d. That GGTC did not hold grain in storage facilities in at least an amount equal to or greater than the total amount of grain covered by warehouse receipts issued for each such facility.

39. The above omissions concerned material facts.

40.    The Defendant, on the date of each representation or omission, failed to exercise reasonable care or competence in obtaining or communicating correct, complete, and truthful information.

41.    StoneX acted in reasonable reliance upon such representations and omissions by, among other things, continuing to purchase grain from GGTC and refraining from demanding shipment of grain as StoneX was entitled to under its warehouse receipts.

42.    As a direct and proximate result of StoneX's reliance on the Defendant's misrepresentations, StoneX suffered extra-contractual pecuniary damages including, but not limited to, costs associated with investigating the extent of Defendant's misrepresentations and omissions, costs associated with recovery of StoneX Grain, and loss of business opportunity and/or business reputation.

## COUNT FOUR – FRAUDULENT MISREPRESENTATION

43.    StoneX adopts and incorporates all preceding paragraphs as if they were fully set forth herein.

44.    Upon execution of the Master Agreement, and on the date of each Transaction, the Defendant made the following representations to StoneX, among others:

a.    That GGTC was duly licensed as a warehouseman and was in compliance with all applicable licensure, bonding, insurance, and regulatory requirements;

b.    That GGTC was in compliance with all applicable State or Federal law; and

c.    That all warehouse receipts issued by GGTC reflected actual commodities stored in the applicable GGTC warehouse(s) of the grade, quality, and quantity described in each such warehouse receipt.

45.    Upon consummation of each Purchase Confirmation, upon issuance of each warehouse receipt, upon issuance of GGTC's "daily position reports" pursuant to Texas law, and from time-to-time via email and telephone, the Defendant represented that GGTC held certain quantities and amounts of grain in storage in its facilities in at least an amount equal to or greater than the total amount of grain covered by warehouse receipts issued for each such facility.

46.    The above representations were false.

47.    The above representations were material.

48.    The Defendant, on the date each representation was made, knew that said representation was false and/or made the representation recklessly.

49.    The Defendant knew and intended that StoneX would act and/or rely on the representations.

50.     StoneX acted in reasonable reliance upon the representations by, among other things, continuing to purchase grain from GGTC and refraining from demanding shipment of grain as StoneX was entitled to under its warehouse receipts.

51.     As a direct and proximate result of StoneX's reliance the Defendant's misrepresentations, StoneX suffered extra-contractual pecuniary damages including, but not limited to, costs associated with investigating the extent of Defendant's misrepresentations, costs associated with recovery of StoneX Grain, and loss of business opportunity and/or business reputation.

## COUNT FIVE – FRAUD BY OMISSION

52.     StoneX adopts and incorporates all preceding paragraphs as if they were fully set forth herein.

53.     Upon execution of the Master Agreement, upon consummation of each Purchase Confirmation, upon issuance of each warehouse receipt, upon issuance of GGTC's "daily position reports" pursuant to Texas law, and from time-to-time during email and telephonic correspondence, the Defendant concealed and/or failed to disclose the following:

   a.     That GGTC was not in compliance with all applicable licensure, bonding, insurance, and regulatory requirements;

   b.     That GGTC was not in compliance with all applicable State or Federal law;

c.    That all warehouse receipts issued by GGTC did not reflect actual commodities stored in the applicable GGTC warehouse(s) of the grade, quality, and quantity described in each such warehouse receipt; and

d.    That GGTC did not hold grain in storage facilities in at least an amount equal to or greater than the total amount of grain covered by warehouse receipts issued for each such facility.

54.    The above omissions concerned material facts.

55.    The Defendant knew that StoneX was ignorant of said facts.

56.    The Defendant knew that StoneX did not have an equal opportunity to discover the truth of said facts.

57.    The Defendant intended to induce StoneX into continuing a business relationship with it and GGTC when it concealed and failed to disclose the above facts.

58.    StoneX acted without knowledge of the above facts by, among other things, continuing to purchase grain from GGTC and refraining from demanding shipment as StoneX was entitled to do under its warehouse receipts.

59.    As a direct and proximate result of StoneX's reliance the Defendant's omissions, StoneX suffered extra-contractual damages including, but not limited to, costs associated with investigating the extent of Defendant's misrepresentations,

costs associated with recovery of StoneX Grain, and loss of business opportunity and/or business reputation.

## COUNT SIX – FRAUDULENT INDUCEMENT

60.    StoneX adopts and incorporates all preceding paragraphs as if they were fully set forth herein.

61.    Upon execution of the Master Agreement, and on the date of each Transaction, the Defendant made the following representations to StoneX, among others:

a.    That GGTC was and would continue to be duly licensed as a warehouseman and in compliance with all applicable licensure, bonding, insurance, and regulatory requirements;

b.    That GGTC was and would continue to be in compliance with all applicable State or Federal law; and

c.    That all warehouse receipts issued by GGTC would reflect actual commodities of the grade, quality, and quantity described in each such warehouse receipt.

62.    Upon consummation of each Purchase Confirmation, the Defendant represented to StoneX, among other things, that GGTC: (1) was and would continue to be duly licensed as a warehouseman and in compliance with all applicable State and Federal law as well as all licensure, bonding, insurance, and regulatory

requirements; and (2) held certain quantities and amounts of grain in storage in its facilities in at least an amount equal to or greater than  the total amount of grain covered by warehouse receipts issued for each such facility.

63.    The above representations were false and material.

64.    The Defendant, on the date each representation was made, knew that said representation was false and/or made the representation recklessly.

65.    The Defendant knew and intended that StoneX would act and/or rely on the representations by entering into the Master Agreement and each Purchase Confirmation.

66.    StoneX acted in reasonable reliance upon the representations by, among other things, entering into the Master Agreement and each of the Purchase Confirmations, which constitute valid contracts.

67.    As a direct and proximate result of StoneX's reliance the Defendant's misrepresentations, StoneX suffered damages including the loss of the benefit of its bargain under the Master Agreement and each repo transaction as well as extra-contractual pecuniary damages including, but not limited to, costs associated with investigating the extent of Defendant's misrepresentations, costs associated with recovery of StoneX Grain, and loss of business opportunity and/or business reputation.

**WHEREFORE**, StoneX demands a judgment against the Defendant, Octavio Garcia, for the Indebtedness of not less than $19,461,058.00, plus extra-contractual pecuniary damages, interest, reasonable attorneys' fees, litigation costs, and other costs of collection.[2]

## RESERVATION OF RIGHTS

StoneX expressly reserves its rights under any and all applicable law, whether State or Federal.  StoneX additionally reserves its rights to amend this Complaint pursuant to FED. R. CIV. P. 15(a), *et al.* whether as a matter of course, or with this Court's leave, if required.

Respectfully submitted this, the 16TH  day of May, 2023.

/s/Kurt Stephen
Kurt Stephen (TX Bar No. 19147500)
David W. Houston, IV, *Pro Hac Vice Incoming*
D. Christopher Carson, *Pro Hac Vice Incoming*
Joshua W. Stover, *Pro Hac Vice Incoming*

*Attorneys for StoneX Commodity Solutions LLC*

OF COUNSEL:
THE LAW OFFICE OF          BURR & FORMAN LLP
KURT STEPHEN, PLLC      222 2nd Ave S #2000
100 South Bicentennial       Nashville, Tennessee 37201
McAllen, Texas 78501          Telephone: (615) 724-3200
                                            Email: dhouston@burr.com

---

[2] Nothing stated in this Complaint herein should be considered an attempt to collect or demand payment from GGTC. This Complaint and Civil Action are solely and independently against the Defendant, Garcia, *not* GGTC.

Telephone: (956) 631-
3381
Facsimile: (956) 402-
3001
Email:
kurt@kstephenlaw.com

420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Email: ccarson@burr.com

190 E. Capital Street, Suite M-100
Jackson, Mississippi 39201
Telephone: (601) 355-3434
Email: jstover@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to LR5.3, on this, the 16TH day of May, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Also, and pursuant to LR4, I have attached a summons hereto for issuance by the Clerk upon the Defendant.

_/s/ Kurt Stephen_
Kurt Stephen (TX Bar No. 19147500)

**OF COUNSEL:**
The Law Office of Kurt Stephen, PLLC
100 South Bicentennial
McAllen, Texas 78501
Telephone: (956) 631-3381
Facsimile: (956) 402-3001
Email: kurt@kstephenlaw.com

# **THE SUMMONS**

*(See attached.)*

## **EXHIBIT 1 – the Master Agreement**

*(See attached.)*

## <u>EXHIBIT 2 – the Guaranty</u>

*(See attached.)*